Next case called for oral argument is People v. Anson Carr. Counsel, whenever you're ready, may proceed. Thank you, Your Honor. May it please the Court. Counsel, my name is Curtis Bluff. My client is Anson Carr. We request a new trial. I'd like to briefly summarize the course of events in this case, and my point will be to show that when we all leave here today, we are not going to know if this crime actually occurred. You're not going to know. I'm not going to know. Only two people are going to know. One of them is the accuser, and the other is in the Danville Correctional Center. Anson Carr lived with his girlfriend and his girlfriend's two teenage daughters and his girlfriend's mother. On the night of February 22, 2005, Anson played at a dart league, and his girlfriend worked at the casino. The girls stayed home with Grandpa, and Anson came home after midnight, so he got home earlier than 23, and when he got home, the mother was at work. The older sister was asleep on the couch. Grandma was asleep in the older sister's bed, and the younger sister was at the refrigerator, drinking milk from a jug. Anson and the team had a brief conversation in the kitchen, and the team went off to bed, to her room. Anson followed her. According to the team, Anson had anal intercourse with her. According to Anson, he threw a blanket at her and went to bed. Eventually, the mother came home from work and went to bed herself. February 23 was a school day and a work day. Anson and the girls got up and got ready for work and for school. Anson and the younger sister talked in passing. They talked and they joked about the mother's dog. The younger sister showered, Anson showered, Anson went to work. The team woke her mother and told her that Anson had assaulted her. The mother took her daughter to the hospital. Meanwhile, Anson was at work. He worked the day, and when the day was done, he drove home. On his way home, police pulled him over and they took him downtown. Eventually, the team would claim that Anson had followed her twice before. But, she was carefully interviewed on the 23rd. The responding police officer and hospital personnel are well trained these days on what to do in a case like this. And they asked her, specifically, whether there were prior incidents. She told them this was the first time. At the hospital, a sexual assault kit was done, samples collected, including anal swabs. She was examined. The emergency room physician said that she had two tiny anal tears. He said that the tears were consistent with her story, but there were, he said, so many other ways it could happen. That was his words, so many other ways. And one of the couple examples that he gave was, could have happened on the toilet. His diagnosis was, quote, alleged sexual assault. Well, the sexual assault kit went to the police lab. The officer went to the home. He collected underwear, clothing, bedclothes for the police lab. Forensic scientists testified at trial. What he testified was that nothing was found. No evidence that Anson assaulted the girl. No evidence that anyone assaulted the girl. The jury found Anson guilty of penetration offense, not guilty on the other. The judge sentenced Anson to eight years. And, as I said, today he's at Danville, a high-medium security prison, and he's a registered sex offender. Like I said, my point is, that's all we've got. We don't know. You don't know and I don't know if he really did this. I can't argue legal insufficiency of the evidence because we have one witness who testified that he did it, but this is as close as it gets without me being able to argue that. It's a pure soiree match. It's uncontradictive that Anson, he went to bed, he slept the night, he got ready for work. As the girls got ready for school, he drove to work. He worked his day, came home. How was it nothing happened? Which is what he says happened. Nothing from the forensic scientists, not so much as a hair out of place. Anson testified. Of course he could testify because he didn't have a criminal record. He was an Army veteran. On the stand, he was crossed examined, but he was not impeached in the slightest detail. Not in the slightest. On the other hand, the girl was impeached plainly. At the Child Advocacy Center, she said Anson had fondled her twice before. She told the jury that too. She forgot what she told the police and the hospital person. They're all trained to ask, have you been touched before? She told them she hadn't. She changed her story. She testified that the morning of the 23rd, near the shower, Anson told her to wash up good. And that was the only conversation they had that day. She admitted, though, on the stand, that she didn't tell anybody else about the wash up good comment. That came later. And she had to admit that they had stood in the hallway talking joke about that door. So the so-called wash up good comment, if it occurred, wasn't their only conversation. She testified on direct examination that Anson's penis was unlubricated, but forgot she told police he'd used saliva. So we have at least three specific changes of story from the complaining witness. Nothing to impeach my client at all. And the complaining witness had to admit she didn't say anything to her sister, to her grandmother. And you're right there. The time this attack supposedly took place. And so, it is in this setting that the assistant state's attorney questioned the nine witnesses. And questioned them and questioned them about how the complaining witness felt.  What relevance they could possibly have, I can't imagine, other than to make the jury think, how were they feeling? It was them, it was their children. Repeatedly injected into this trial. Questioned how the complaining witness felt. I marked a few examples, but they're in the brief. How are you feeling being up here right now? You're a little nervous, aren't you? What was going through your mind when he did that to you? How did you feel while the rape kit was being done to you? The jury's sitting there listening to this. While you were being examined, how did you feel? How did you feel about the defendant after what happened to you? Does part of you still love him? What's this doing to you? How are you doing now? How is your life going now? Why are these questions coming up in a swearing match? Where we only have the word of two witnesses as to whether a crime even occurred. Why are we burning the jury to think about how the complaining witness feels? When we don't even know if the crime occurred. To the social worker at the hospital, the state's question. What was the victim's emotional state? To the mother, what was your reaction to your daughter's emotional state? What was your emotional state? The state's brief doesn't even attempt to justify these, at least not in the legal sense. And I've cited in my brief the words of our Supreme Court, where guilt or innocence depends entirely on the credibility of the accused or the defendant. No error should be permitted to intervene. Will error intervene? Plenty of error intervened. And I submit this is as close a case as you can get. Another quote, I'm not going to go around the cases, but It is error for the state to say anything, the only effect of which is to arouse passion and prejudice of the jury without shedding any light on the paramount question presented to the jury. And I'd say the state with those questions definitely crossed that line. But I wasn't really prepared for what I was going to see when I got the state's brief. It's a guilty plea. It's a guilty plea by the state. The state writes, the questioning was designed to explain her behavior on the stand and strengthen her credibility. Well, not strengthen her credibility, strengthen her own parents' credibility. There's a difference. The questioning, this is the state again, The questioning served to prevent them, maybe the jurors, from doubting her credibility. Well, yes, I agree with that. That doesn't make it right. I mean, I missed somewhere, and it's not the state's brief, the rule that it's okay for the state to cross the line into improper questioning if they have to do it to avoid losing the trial. I'm missing that. Again, page 19 now. The prosecutor was anticipating attacks on her credibility. The prosecutor was trying to strengthen her credibility and remove doubt. Well, the word reasonable isn't in there. But you can see exactly what happened and what the state's admitting here. Page 20. We asked these questions to support her testimony. Yes, they did. If she had been laughing, counsel, when she was being examined, would that be a proper inquiry from the defense counsel? It would be fair of comment at closing argument. Pardon me? It would be fair of comment at closing argument. Could you ask her if she was laughing during the examination? On cross-examination, would that be a legitimate question? Ask her if she was laughing. The complaint witness was laughing during, say, while accusing him. And he said this to me, ha, ha, ha. No, when she was being examined or being questioned by DCFS or whatever, and her state of mind then, that she was giggling all through the interview, would that be a legitimate point of inquiry that the defense could make on cross-examination? Well, the state would surely want to get it in. I mean, the defense would surely like to get it in as to its relevance. Would that be a legitimate avenue on cross-examination? I can't say I consider that, Your Honor. I can think of opposing arguments on that. Okay. I see where you could argue, what's the relevance of that? Just like I argue what's the relevance of this. It would seem to me like a moral... You're saying the hospital, laughed at the hospital. Yeah. Yeah. Afterwards. Hmm. I'd have to give that to the collection. Okay. Well, I could go on with the state's comments. But I'm not going to. But I would... I mean, the court can read them. They're in the briefs. But I'd like to point out that the state also argues, hey, some of these questions weren't answered. I just thought of a great question this morning. At least, I thought it was great. I always think I'm smarter than everybody else is. How about this question? Isn't it true that you went to prison for a previous sexual assault? Objection! Sustained. No answer. I mean, this question's not as egregious. Heck, that'd be a pretty bad question. I'd submit here, we're just talking about degree. I'm not going to spend much time on the jury instructions for a couple of reasons. Number one, I don't think it presents as well as the questioning argument does orally. Another is, frankly, I don't know where to go with it at this point after the state's admitted that... Well, the state is now arguing that the oral instructions were correct and that the written instructions were incorrect. I don't see how that makes it any better. We still have oral and written instructions that do not match up in an extremely close case. And the point of our argument against people's instruction 19 was it's not a lesser-included offence of the offences with which Anson was charged. It just isn't. It's just standing out there as a freestanding offence, and we've managed to find the McCauley case, in which the court said that the prejudice caused by instructing a jury on an offence not charged isn't implies to the jury that the defendant is guilty of crimes, with which he has not been charged. The McCauley case is a pretty good case. So we end up with... Your basic contention on the... My understanding of reading the briefs was your additional contention as to the jury instruction 19 was this created confusion, evidenced by the actions the jury took. Is that correct? Yes. Well, I noted the... It's really unusual, of course, to have a note come back from the jury and then indicating a verdict on one count and then have it come out the other way. I've never seen that before. Honestly, I don't know how much it's worth. The note, that is. But on the other hand, we know it's a darn close case. I don't see... I don't see how the state can do anything to deceive what close case this is. And then we have that, too. I am more personally persuaded... Of course, I'm always persuaded in my clients' case. Your Honours, you've seen me here before. You know I always love my clients. But the questioning is unfathomable. I'm sure that you noticed the one place where the state's... The assistant attorney, rather, state's attorney, repeatedly asked an improper question. Yes, it was an answer. Yes, it was an answer. But it just... It was brought up three times. And the judge finally had to say, well, it can be re-read, but it's not going to be answered. There's not much to go on in a case like this. I mean, if the state tries a case like this, what have they got? My guy had no prior, so he was going to testify. He was going to do that. He hadn't been shaken in any way. The state's going to get a teenager. She's going to testify. She's changed her story. It changed her story. And like the state says, at that point, you've got to do something. You can't just let the defense win the verdict and walk out of here. You've got to do something. Well, we did these things to improve her credibility. We did these things to make her look better. We had to do it. We did them. You know, and perhaps I should add, and we dared her to do something about it. And that... Well... That, I guess, is up to this court. But... I'm going to repeat it. I've said it twice. The clients over in Danbury, high and medium security facility, serving eight years. Serving eight years. And what hurts, really, is, you know, I can't sit up here and say he didn't do it. I sure can't say he did do it. And you all cannot say he did or didn't do it. The counsel can't say he did or didn't do it. Only two people know. And it was so important that this be the cleanest trial you ever saw. But it wasn't. It wasn't. The assistant state's attorney played dirty here. Played dirty. We request a new trial. Thank you, Your Honor. Thank you, counsel. Counsel? Counsel? May it please the court? Counsel? Defendant has two complaints here. One, prosecutorial misconduct. And the other to do with jury instruction 19, which you heard briefly about, defining criminal sexual abuse. Which defendant objected to at a conference for instructions, and the objection was sustained. Now, first I'd like to address that briefly. Now, defendant went to trial on two charges. Aggravated criminal sexual assault. Aggravated criminal sexual abuse. He was convicted of only one. Aggravated criminal sexual assault. He was convicted of assaulting T.H., the daughter, the 13-year-old daughter, of his live-in girlfriend of four years. Now, instruction 19, as I said, was the definition of criminal sexual abuse. And contrary to what defendant argues in his brief and what he seems to ignore in his oral argument, is that plain error applies here. Defendant did not preserve this issue for appeal because although at the instructions conference defendant objected to this instruction and said, I think it's going to confuse the jury if we do the abuse, regular abuse charge, and we also do the aggravated abuse charge, which was instruction 20, the trial court said, yes, I agree, it could confuse them, so let's not do that. That was said and done. Now we have a new issue. At trial, right after trial, I guess I should say, when the judge is reading the instructions, he accidentally goes ahead and reads instruction 19. Now, defendant, defense counsel, go objection. The prosecutor starts to go, you know, he judged, but then the judge says, because he's immediately recognized what he's done, says, wait until the jury's left. Jury leaves for deliberation. The court says, I understand, you know, I messed up, I've read that, here's how I propose to remedy it. I'm going to only send back the written instructions that are accurate, not send it back. Defense counsel doesn't object, defendant doesn't object, nothing. Then defendant brings it up in his motion for new trial. So the plain error clearly applies here. Now, first of all, I'm not saying that now it was okay for him to have read that. I'm not changing my argument. I'm merely saying that it's not really clear whether it was error anyway. The trial court may have been allowed to allow that instruction, given what the Illinois-Padre jury instructions say, as you'll see in my brief, that 11.61, which was instruction 20 on aggravated criminal sexual abuse, it says at the bottom, give 11.59, which is regular criminal sexual abuse. Now, although I believe that, you know, maybe the trial court could have decided, eh, that's a little too confusing, I don't want it, in which the trial court did, that's fine, regardless here whether there was error or not, there simply is just no prejudice. There's no harm, there's nothing. He was acquitted of the abuse charge. He was convicted of only the assault charge, and I don't know what kind of magic trick could lead us to saying that the jury convicted him of assault because they got a criminal sexual abuse instruction read to them once. It just doesn't add up. I don't know where the harm is. I'd like to hear that told us, because I just don't see it. I mean, he was not convicted of an abuse charge at all. Now, as to defendant's complaint of prosecutorial misconduct, the complaints regarded are several testimonies, including the victim, TH, her mother, the doctor, the nurse, the social worker, which is Mrs. Corrego at the hospital. But also here, defendant seems to ignore that plain error also applies. We didn't hear him ask for a mistrial. We didn't hear him object to many of these things. Yes, a few were objected to, a few were sustained. Did he ask the court to strike the questions because the prosecutor had asked an improper question, even if there was no answer? Did he even ask to strike it? No. If it was so bad, why didn't he move for a mistrial? And why isn't he arguing sufficiency of evidence if it's so close? It's not so close. The victim testified. Yes, it's a he said, she said. Since when is it not in most criminal sexual abuse charges where a father figure is assaulting a child? That's very common. Very rarely are you going to have an eyewitness. But not only did we have the child testify, we had her mother testify that she came to her immediately hysterical after the defendant left that morning. We had the doctor testify that, yes, the anal tears were consistent with her story. No, it's not his job to decide whether she's telling the truth. But he was reluctant in his testimony to say, oh, it could have been caused by this or this. He was reluctant altogether. He knows that's not his position. It was the jury's decision to convict the defendant, which they did. They heard the evidence. And as for all of this misconduct and this questioning, defendants make people versus Clark as authority for the proposition that it is air for the state to say anything, the only effect of which is to arouse the prejudice and passion of the jury without shedding any light on the paramount question presented to the jury. Only effect. He claims that we cited no authority for why all of this question was relevant. Well, it's relevant for that right there. The only effect of these questions were not just to inflame the prejudice and passions of the jury. There was reason. As he said, this was a he said, she said. It is the burden of the state to prove the case, prove this occurred and prove that the witness is telling the truth. Therefore, how she's feeling as she's up on the stand may be relevant if she accidentally gave the wrong age. It goes to credibility. And once again, he didn't object to that one. As what the treatment was from the nurse. It goes to whether an injury even occurred. As to the social worker talking about what she documented, that goes to her job and that she performed her job well and that questions were asked. And all these inconsistencies that supposedly T.H. gave, very minor. And that just supports my argument. That's why these questions needed to be asked, so that the jury could understand why she might be mistaken, why maybe immediately six to eight hours after the event she was reluctant to say any more than she had to. No, she didn't tell last time, but she also wasn't injured last time. She said that this was a father figure. She didn't want him to have to leave the house. She was scared that he would leave. That's why she hadn't told before. Well, it got bad enough that she said she didn't want to get hurt anymore. So she told. This is just simply not the flagrant prosecutorial misconduct the defendant says it is. Such as in People v. Daniels where the prosecutor called the defendant a drug-dealing cop killer and put the bloody cop uniform in front of the jury the entire time. This is nothing like that. These are a few questions that maybe the defense counsel should have objected to more. Maybe he should have asked them to be stricken from the record, just like the prosecutor maybe could have not said a few. But they were relevant. They were things that were supported by the record. When you look at the record, T.H. was not this uncertain, wavering, oh, well, he did this, he didn't do that. She was consistent. She told several people the exact same story. And as far as some of the questions that he repeated for you, how she felt during the rape hit and being examined, those were objected to and sustained. They weren't answered. And he didn't ask to strike those questions. This evidence was not razor-thin. And as far as the defendant's argument in his reply brief, that all this corroborating evidence is equal to the defendant saying once, I didn't do it to a cop and a cop testifying to that, it's just illogical. Obviously, the evidence weighed more heavily in favor of T.H.'s testimony. Now, even defendants' attempts to show that T.H. was lying and the motive to lie was unpersuasive. She didn't hate him. And once again, some of those improper questioning that he alleges was to show that she did not hate him. She's went on with her life. She doesn't have this vendetta and that her and her mom did suffer as this. It wasn't like they were trying to get away from him and to keep the house. The house wasn't even their name. Now, as I said before, it's curious defendants not arguing insufficiency of evidence because the way he attacks the prosecutor in this case and the way he thinks that we made this all up and went after his client, you would think he would. Now, if there are any further questions, the people request that the defendant's conviction be affirmed. I don't believe there are. Thank you, counsel. Counsel, rebuttal. Thank you, Your Honor. Not flagrant. That's what I just heard. Prosecutor's conduct was not flagrant. Well, there's two components to weighing a prosecutor's conduct. One of them is what did the prosecutor say to do? And the other is how close is the evidence? You've supplied the cases, but you don't need those cases. You know those cases. Two things. What was the conduct? What was the evidence? The state doesn't want to talk about the evidence. This was much too close. I said, I promised you when you went home and I go home, we're not going to know if the crime occurred here or not. I think I made my point. We don't know. This jury instruction. We know. In this excruciatingly close factual case, the instructions read did not match the instructions written. We know that. We know there's error in these instructions. We know there's error consisting of prosecutorial misconduct. The question is, of course, is this a fair trial? Was it or not? Is this the kind of evidence where with this kind of misconduct and this kind of instructional error, we can say this man got a fair trial? You know, there's all kinds of things that the defense couldn't say. The defense couldn't say, excuse me, Hanson, is it true that you have no criminal record whatsoever? Well, that was a motion in limited. We couldn't even go into that. Is it true, Hanson, that you took a polygraph test to clear yourself and you passed it? Is that true? We couldn't get into that. It was a motion in limited. We weren't allowed to touch it. Isn't it true, Hanson, that to clear yourself, you submitted to a computerized voice stress analysis to clear yourself? Isn't it true that you passed that, Hanson? Motion in limited. We couldn't go into that. We played fair. We didn't try to go into it. We have standing in court order not to do it. This, these comments, I cited plenty of case law. The state knows this is improper. This has been improper for decades. To question counsel like this, to question an accused, a complaining witness like this, how did you feel? How did you feel while the rape kit was being done to you? We call it a sexual assault kit now, but rape kit sounds better when you try to make a point. How did you feel when that rape kit was being done to you? Objection. Yes, it's true. It wasn't answered. But, okay, let's put another how would you in there. How would you feel if you were on a jury and you heard the prosecution say, how did you feel while that rape kit was being done to you? Now, what goes through your mind at this point? For the women, I suppose, how would I feel while a rape kit was being done to me? Maybe for some of the men, too. For the men, probably, how would I feel? I thought my loved ones were going through that. How would I feel? Because that really, in fact, makes the jury upset. It doesn't make them think about, I've got to watch this and figure out who's telling the truth. It's how would I feel. And once you're talking about how would I feel, you've diverted the jury's attention. It's a trial over something else. Not flagrant. No, you know, if I was up here and talking about a client, who had given a statement to the police, and then he pleaded guilty, and now he was trying to get out of it, he was arguing, effective assistance or what have you. Error. Error's got to be pretty good to make a difference. We have the opposite case here. The opposite case. Where this is so, the result is so uncertain. We don't know what happened here. And to have Madison County State's Attorney's Office conducting their trials like this, why, as they said, so they would win, so they wouldn't lose. It's an affront to justice, and it's a referendum. It's a referendum. Three justices of the appellate court as to whether this is the way close trials ought to be conducted. Thank you, counsel. We appreciate the briefs and arguments of counsel. We'll take this case under advisement. Thank you.